## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| LEON GASSAWAY, STANROD JOHNSON, TAVARE RIDGE, BRANDON ROBINS, AND NICHOLAS SPRAGLIN, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § | Civil Action No. 3:20-CV-983-L- |
| BH | | |
| | § | |
| BEACON FABRICATION, LLC and ANCHOR FABRICATION, LLC, | § § § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By order of reference dated August 21, 2020 (doc. 18), before the Court for recommendation is *Defendants' Motion to Dismiss and Compel Arbitration and Brief in Support*, filed July 17, 2020 (doc. 11). Based on the relevant filings and applicable law, the motion should be **GRANTED**, and the case should be dismissed without prejudice.

### I. BACKGROUND

Leon Gassaway, Stanrod Johnson, Tavares Ridge, Brandon Robinson, and Nicholas Spragin (collectively Plaintiffs) sue Beacon Fabrication, LLC (Employer), a privately-owned metal fabrication manufacturer in Garland, Texas, and its alleged owner, Anchor Fabrication, LLC (Anchor), for discrimination and retaliation in employment. (doc. 1 at 1, 3, 5.)[1]

At the time they were hired, Plaintiffs were provided a copy of its Employee Handbook (Handbook), which was also used by Anchor, and an Employee Handbook

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the

Acknowledgment form (Acknowledgment). (*See* doc. 12-1 at 2, 4-15.)    The

Acknowledgment form they all signed states:

> I promise to read this handbook within my first week of employment or upon one week of receipt of the handbook. I understand that the policies and procedures presented here are for information and illustration purposes and are subject to revision or revocation, with or without my prior knowledge, at any time for any reason deemed necessary by management.

(*Id*. at 17-21.)

The Handbook includes a dispute resolution program (Plan) that requires

Employer and Anchor (collectively Defendants) and their employees to submit disputes to

binding arbitration:

### <u>EMPLOYEE RIGHTS</u>

> By agreeing to the Plan, Employees do not give up any substantive legal rights. If the Parties cannot resolve their disputes as described herein, the Parties agree to ultimately resolve said claims or disputes in arbitration rather than litigation. It is vital to understand that this Plan does not waive anyone's substantive legal rights. In fact, the Plan neither creates not destroys any rights; it merely changes the forum in which those rights will be resolved, in a way that will be mutually beneficial.

> HOWEVER, YOU ARE WAIVING YOUR RIGHT TO LITIGATE ANY DISPUTE YOU MAY HAVE WITH THE COMPANY, WHETHER PAST, PRESENT, OR FUTURE.

(*Id*. at 6-7) (capitalization in original). Article 7 addresses amendment, duration, and

election of the Plan:

> **7.11 Amendment**. The Company has the sole right to amend this Plan. An amendment may be made by resolution or consent of the Board of Directors, or by an instrument in writing executed by the Plan Director. The amendment shall describe the nature of the amendment and its effective date.

> <u>7.12 Duration</u>. This Plan shall survive the employer-employee relationship between the Company and the Employee, and shall apply to any dispute whether it arises or is asserted before, during, or after termination of employment.

page numbers at the bottom of each filing.

7.13 Employee Election. This Plan is not a condition of employment. Any employee who desire to retain the right to resolve disputes through litigation rather than according to the Plan, shall notify the Company in writing no later than seven (7) days after the date the Employee is hired. The notification must be in writing and timely filed.

7.14 Construction and Enforceability.

(a) Any issue or dispute concerning the formation, applicability, interpretation, enforceability, revocability, fairness, inducement, unconscionably, misrepresentation, unfair bargaining power, duress, public policy, or general rules of equity, shall be subject to arbitration as provided herein. The arbitrator, and not any federal, state[2] or local court or agency shall have authority to decide any such issue or dispute.

(b) The decision of an arbitrator or any such issue or dispute, as well as any dispute submitted to arbitration as provided in this Plan, shall be final and binding upon the Parties.

(*Id*. at 14-15.)  (bold and underline in original).  The Plan also states that "[t]he Company may terminate this Plan by executing a notice of termination, specifying the date of termination." (*Id*. at 15.)

As allowed by section 7.13, Plaintiffs did not notify Employer in writing that they were electing to retain the right to resolve any disputes through litigation rather than according to the Plan. (*Id*. at 2.) Defendants did not amend or terminate the Plan at any point during or after Plaintiffs' employment. (*Id*.)

On April 21, 2020, Plaintiffs sued Defendants for disparate treatment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, and The Civil Rights Act of 1866, as well as discrimination, hostile work environment, and retaliation under the Texas Employment Discrimination Act. (doc. 1 at 17-21.) They seek compensatory and punitive damages, pre and post judgment interest, attorney's fees, and injunctive relief.  (*Id.* at 21-22.)

_____

[2]  The Plan does not identify which state law applies, but it states that it "shall be governed, construed and enforced according to the Federal Arbitration Act[.]" (doc. 11 at 14.)

On July 17, 2020, Defendants moved to compel arbitration and to dismiss Plaintiffs' claims. (doc. 11.) On August 7, 2020, Plaintiffs responded that the alleged arbitration agreement is not valid because it is illusory, and alternatively, it is unconscionable.  (doc. 15.) On September 20, 2019, Defendants filed their reply. (doc. 17.)

## II.  FEDERAL ARBITRATION ACT

The Federal Arbitration Act (FAA) provides that "a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (quoting 9 U.S.C. § 2).   It "embodies the national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  The FAA provides "for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement."  *EEOC v. Waffle House, Inc*., 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3-4.)  A court may not compel arbitration under the FAA until it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C § 4.

Courts in the Fifth Circuit employ a two-step inquiry when determining a motion to compel arbitration under the FAA.  *See Fleetwood Enters*., *Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (citing *Mitsubishi Motors Corp*. *v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).  The first step is to determine whether the parties agreed to arbitrate the dispute at issue.  *Webb v. Investacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam).  This involves consideration of "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."

4

*Safer*, 422 F.3d at 294 (citations omitted); *accord Webb*, 89 F.3d at 258. In light of the strong federal policy favoring arbitration, "the Supreme Court has held that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Safer*, 422 F.3d at 294 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). This presumption "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties,'" however. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).

The second step of the inquiry is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (quoting *Webb*, 89 F.3d at 258); *accord OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001) (per curiam) (citing *Mitsubishi*, 473 U.S. at 628.). "Only if the court finds there is an agreement to arbitrate does it consider the second step of whether any legal constraints render the claims nonarbitrable." *Edwards v. Conn Appliances, Inc.*, No. 3:14-CV-3529-K, 2015 WL 1893107, at *2 (N.D. Tex. Apr. 24, 2015) (citing *Webb*, 89 F.3d at 258).

### III. APPLICABLE STANDARD

"While the two-step inquiry used to consider a motion to compel arbitration under the FAA is well-settled, 'the [Fifth] Circuit has never discussed the appropriate standard for a district court to apply when considering a motion to stay or compel arbitration.'" *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443 (N.D. Tex. 2019) (quoting *Rain CII Carbon, LLC v. ConocoPhillips Co.*, No. CIVA 09-4169, 2010 WL 148292, at *3 (E.D. La. Jan. 11,

2010), and citing *Grant v. House of Blues New Orleans Restaurant Corp.*, No. CIV.A. 10-3161, 2011 WL 1596207, at *2 (E.D. La. Apr. 27, 2011)). *Jackson* noted that "'[t]he majority of other circuits apply a summary judgment-like standard, giving deference to the claims of the non-movant.'" *Id.* (quoting *Rain CII Carbon*, 2010 WL 148292, at *3 (citing *Clutts v. Dillard's, Inc.*, 484 F. Supp.2d 1222, 1224 (D. Kan. 2007)), and citing *Grant*, 2011 WL 1596207, at *2-4 (collecting cases using summary judgment standard on motion to compel arbitration).[3] District courts in this circuit have also considered motions to compel arbitration under the summary judgment standard. *See id.*; *see also Rain CII Carbon*, 2010 WL 148292, at *3; *Rocha v. Macy's Retail Holdings, Inc.*, No. EP-17-CV-73-PRM, 2017 WL 4399575, at *2 (W.D. Tex. Oct. 3, 2017) ("Similar to a motion for summary judgment, and subject to the same evidentiary standards, the party alleging an arbitration agreement must present summary proof that the dispute is subject to arbitration ... and the party resisting arbitration may contest the opponent's proof or present evidence supporting the elements of a defense to enforcement." (citation omitted)). "The courts that use the summary judgment standard of Fed.R.Civ.P. 56 have found it appropriate 'because the district court's order compelling arbitration is in effect a summary

---

[3]*See, e.g., BOSC, Inc. v. Board of County Commissioners of County of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017) (citing *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (applying the similar framework of "summary judgment practice" when considering a motion to compel arbitration)); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (explaining that courts deciding motions to compel apply a "standard similar to that applicable for a motion for summary judgment")); *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 774 (3d Cir. 2013) (explaining that where "the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue," the Rule 56 summary judgment standard applies); *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008) (citing *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir.1980) (applying "summary judgment standard in deciding what is sufficient evidence to require a trial on the issue of whether there was an agreement to arbitrate")); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (applying the standard required of a party opposing summary judgment under Rule 56 to the evidentiary standard a party seeking to avoid compelled arbitration must meet); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement[, and the court] should give to the opposing party the benefit of all reasonable doubts

disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Grant*, 2011 WL 1596207, at *3 (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 528, 532 (3rd Cir. 2009) (quotation omitted)) (citations omitted); *see* 9 U.S.C. § 4 (a district court should not order arbitration unless it is "satisfied that the making of arbitration agreement ... is not in issue").  This Court agrees and likewise applies the summary judgment standard.

Under this well-settled standard, summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  The moving party can also meet its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325 (internal

---

and inferences that may arise.").

quotation omitted).  There is "no genuine issue as to any material fact [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 323.

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex Corp.*, 477 U.S. at 324.  It must go beyond its pleadings and designate specific facts to show the existence of a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 249.4 While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

When considering a motion to compel arbitration under this summary judgment framework, the moving party must first "prove the existence of an arbitration agreement by a preponderance of the evidence." *Price v. Santander Consumer USA Inc.*, No. 3:19-CV-0742-B, 2019 WL 4318883, at *2 (N.D. Tex. Sept. 12, 2019) (*Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012)). A party seeking to compel arbitration must only prove the existence of an arbitration agreement. *See Grant*, 469 F. App'x at 315. Once this burden has been met by the movant, the burden shifts to the non-movant to raise a genuine dispute of material fact regarding the existence of an agreement to arbitrate. *See Hancock,* 701 F.3d at 1261.  "Just as in summary

---

[4]"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011)

judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *See Tinder*, 305 F.3d at 735. If there is no genuine issue of fact as to the existence of an agreement, the party seeking to compel arbitration must establish that the alleged agreement satisfies the requisite elements of a binding contract. *See Huckaba v. Ref–Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). "Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court." *Id.*

## IV.  MOTION TO COMPEL

Defendants argue that the Plan requires that all claims which cannot be resolved internally or through mediation be resolved through binding arbitration.  (*See* doc. 11 at 7.)

## A.    **Step One- Agreement**

A district court must first determine whether a valid arbitration agreement exists between *all* the parties being compelled to arbitration.  *Webb*, 89 F.3d at 258. This requires consideration of "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Safer*, 422 F.3d at 294 (citations omitted); *accord*.  Courts should generally apply "ordinary state-law principles that govern the formation of contracts," but must give due regard to the federal policy favoring arbitration and resolve any ambiguities as to the scope of the arbitration clause itself in favor of arbitration. *Webb*, 89 F.3d at 258 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

---

(citing Fed. R. Civ. P. 56(c)(1)).

Under Texas law[5], a party who seeks to compel arbitration has the initial burden to establish the existence of an arbitration agreement and to show that the asserted claims fall within its scope. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (per curiam), *abrogated in part by In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002); *Wachovia Sec., LLC v. Emery*, 186 S.W.3d 107, 113 (Tex.App.–Houston [1st Dist.] 2006, no pet.). The burden then shifts to the party opposing arbitration to present evidence showing why the arbitration agreement should not be enforced. *Wachovia Sec.*, 186 S.W.3d at 113. The party opposing arbitration may show, for example, that the arbitration agreement was procured in an unconscionable manner, or induced or procured by fraud or duress. *See In re Oakwood*, 987 S.W.2d at 573.

### 1.    Agreement

To meet their summary judgment burden to show the existence of an arbitration agreement, Defendants present the signed forms acknowledging Plaintiffs' receipt of the Handbook, which included the Plan and its arbitration provision. (*See* doc. 11-1 at 17-21.) They also present evidence showing that under section 7.13 of the Plan, an employee could "retain the right to resolve disputes through litigation rather than according to the Plan," but was required to notify Defendants of the election in writing. (*Id.* at 15.) This express language clearly indicates an intent for the parties to be bound to the arbitration agreement, unless they elected in writing to retain their rights to resolve disputes through litigation. *See Huckaba, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (when determining the parties' intent to enter into an agreement "[w]e begin th[e]

---

[5] Although the Agreement does not specifically state that Texas law applies, the parties cite Texas law. (doc. 11 at 12-14; 15 at 11-15.)

10

analysis with the contract's express language.").

Defendants also present evidence that after signing the Acknowledgments, Plaintiffs did not elect in writing to retain their right to resolve disputes through litigation and continued to work for Employer.  (*Id.* at 2.)  Under Texas law, "acceptance as a matter of law can be shown by an employee's conduct in continuing to work after being notified that continuing to work constitutes the employee's assent to the arbitration agreement." *Truly Nolen of Am., Inc. v. Martinez*, 597 S.W.3d 15, 21 (Tex. App. 2020), *review denied* (Aug. 28, 2020) (citing *Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 169 (Tex. App. 2015)); *see also Elsadig v. Luxottica Retail N. Am., Inc.*, No. 3:16-CV-02055-L, 2017 WL 3267926, at *6 (N.D. Tex. July 10, 2017), *report and recommendation adopted*, No. 3:16-CV-2055-L, 2017 WL 3234027 (N.D. Tex. July 31, 2017) ("Because [the plaintiff] continued working for [the defendant] after he received the [Associate] Guide and [the dispute resolution agreement] and he did not submit an opt-out form, he is bound by the terms of the dispute resolution agreement."). Defendants have met their initial summary judgment burden to show that there was an agreement to arbitrate.

### 2.    *Scope*

Defendants argue that Plaintiffs' dispute falls within the scope of the Plan, which delegates authority to determine questions of arbitrability to the arbitrator. (doc. 11 at 13, 16.)[6]

Although the analysis of whether the parties agreed to arbitrate includes consideration of the scope of an arbitration agreement, when the agreement "contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis

---

[6]  Defendants argue that Plaintiffs' claims "fall squarely within the scope of the Plan as they 'touch' issues related to Plaintiffs' employment." (doc. 11 at 14.)  Citing section 1.4, they contend that the Plan is broad in scope and clearly defines a claim or dispute to include "any and all claims arising out of or related to the Employee's

changes." *Clark v. Nordstrom, Inc.*, No. 3:18-CV-2100-D, 2019 WL 3428947, at *2 (N.D. Tex. July 30, 2019) (citing *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016)). Under the FAA, parties may delegate questions to an arbitrator, including questions regarding the scope of the arbitration provision itself. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010). Delegation clauses transfer the power to decide the question of arbitrability from the courts to the arbitrator. *Kubala*, 830 F.3d at 202 (citing *Rent-A-Ctr., W, Inc.*, 561 U.S. at 68–69). Courts may not assume that the parties have delegated to arbitration the questions of validity or scope, however, absent clear and unmistakable evidence of their intent to do so. *See Arnold v. Homeaway, Inc.*, 890 F.3d 546, 552 (5th Cir. 2018) (citing *First Options*, 514 U.S. at 944–45); *see also AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). The party arguing "that an arbitrator has authority to decide arbitrability 'bears the burden of demonstrating clearly and unmistakably that the parties agreed to have the arbitrator decide that threshold question.'" *Hous. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 408 (5th Cir. 2014) (quoting *ConocoPhillips, Inc. v. Local 13-0555 United Steelworkers Int'l Union*, 741 F.3d 627, 630 (5th Cir. 2014)).

Defendants present evidence showing that the Plan includes a delegation clause that gives the arbitrator the primary authority to decide disputes regarding enforceability and arbitrability. (doc. 12-1 at 15.)  Section 7.14 provides:

> Any issue of dispute concerning the formation, applicability, interpretation, enforceability, revocability, fairness, inducement, unconscionably, misrepresentation, unfair bargaining power, duress, public policy, or general rules of equity, shall be subject to arbitration as provided herein. The arbitrator, and not any federal, state, or local court or agency shall have authority to decide any such issue or dispute.

---

employment, application for employment termination, or personal injury." (doc. 11 at 13-14; doc. 12-1 at 7.)

(*Id.*)

The presence of a valid delegation clause requires that a claim be referred "to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 203; *see also Maravilla v. Gruma Corp.*, 783 F. App'x 392, 395 (5th Cir. 2019) (finding that if the plaintiff challenges the enforcement of a contract rather than the formation, it properly heard by the arbitrator). Absent a direct challenge to the delegation clause by the plaintiff, when a party seeking to compel arbitration "points to a purported delegation clause, the court's analysis is limited." *Harris v. Tucker Entm't*, LLC., No. 3:20-CV-651-L-BK, 2020 WL 6370160, at *2 (N.D. Tex. Oct. 6, 2020), *report and recommendation adopted sub nom. Harris v. Tucker Entm't*, LLC, No. 3:20-CV-651-L, 2020 WL 6363877 (N.D. Tex. Oct. 29, 2020)(citing *Kubala*, 830 F.3d at 201.) "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.* But when a plaintiff directly attacks the validity of the delegation clause, rather than the validity of the arbitration provision or the contract as a whole, the court, not an arbitrator, "must first consider the challenge before ordering compliance with that agreement under [FAA] § 4." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 71.

Here, Plaintiffs do not directly challenge the delegation clause or argue that their claims are outside the scope of the Plan. *See Grant*, 469 F. App'x at 315 ("[T]he burden shifts to the party opposing arbitration to demonstrate either that the agreement is invalid or, at a minimum, to allege the dispute is outside of the agreement's scope."). Accordingly, there is no challenge that must be considered before submitting their claims to arbitration as agreed to under the Plan. *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 71. Because the Plan includes a valid delegation provision,

and Plaintiffs do not directly challenge the delegation provision, it is for the arbitrator, and not the Court, to decide threshold questions, including the scope of the arbitration.

Defendants have met their initial burden to show that the parties entered into a valid arbitration agreement that contains a delegation clause, so the burden now shifts to Plaintiffs to show why the agreement should not be enforced *See Clark v. Nordstrom, Inc.*, No. 3:18-CV-2100-D, 2019 WL 3428947, at \*4 (N.D. Tex. July 30, 2019); *see also Tanoury v. Symphony Serv. Corp.*, No. 3:12-CV-1142-L, 2013 WL 705121, at \*4 (N.D. Tex. Feb. 5, 2013), *adopted by* 2013 WL 706048 (N.D. Tex. Feb. 27, 2013).

### 3.    *Illusory*

Plaintiffs rely on the statement in the Acknowledgment that "the policies and procedures presented here are for information and illustration purposes and are subject to revision or revocation, with or without my prior knowledge, at any time for any reason deemed necessary by management," to argue that the Plan "is not a valid contract, but rather illusory and may not be used to now compel Plaintiffs to arbitrate." (doc. 15 at 12.)

An arbitration clause may be illusory "if one party can 'avoid its promise to arbitrate by amending the provision or terminating it altogether.'" *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202 (5th Cir. 2012) (quoting *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010)). If one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, and the other party can suddenly change the terms of the agreement to avoid arbitration, the agreement has been illusory from the outset. *Id.*; *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 867 (Tex. App.–Houston [14th Dist.] 2006, no pet.) ("An illusory promise is one that fails to bind the promisor because he retains the option of discontinuing performance without notice."). "This is not to say,

14

however, that if a party retains any ability to terminate the agreement, the agreement is illusory." *Nelson v. Watch House Intern., LLC*, 815 F.3d 190, 193 (5th Cir. 2016) (internal quotations omitted). "[W]here an arbitration clause is subject to unilateral modification or termination, such agreements are upheld as binding . . . when they feature guarantees to prior notice and no retroactive application." *Henry & Sons Constr. Co., Inc. v. Campos*, 510 S.W.3d 689, 694 (Tex. App.—Corpus Christi 2016, pet. denied) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 569-70 (Tex. 2002)) (other citations omitted). Even if a party retains the ability to modify the arbitration agreement, it is not illusory if there is a "savings clause" that requires advance notice and prevents its retroactive application. *See In re Halliburton Co.*, 80 S.W.3d at 569-70.

Although the Acknowledgment provides that the policies and procedures "are subject to revision or revocation, with or without my prior knowledge, at any time for any reason deemed necessary by management," it does not govern revisions of the Plan. (doc. 12-1 at 17-21.) Amendments of the Plan are governed by section 7.11, which states, in relevant part:

> The Company has the sole right to amend this Plan. An amendment may be made by a resolution or consent of the Board of Directors, or by an instrument in writing executed by the Plan Director. The amendment shall describe the nature of the amendment and its effective date.

(doc. 11-1 at 14.) The Plan also states that before the Company may terminate the Plan, it will execute "a notice of termination, specifying the date of termination. (*See id*. at 15.)

An arbitration agreement is not illusory under Texas law if it requires "notice of any modification or termination and state[s] that any such amendment would apply prospectively only." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 230 (Tex. 2003) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 569–70 (Tex. 2002)). The Plan contains a *Halliburton*-type

savings clause because it requires notice of any amendment or termination of the Plan and applies only to prospective or unknown claims. *See Ruiz v. AH 2005 Mgmt., L.P.*, No. EP-17-CV-197-PRM, 2017 WL 4639702, at *3 (W.D. Tex. Oct. 13, 2017) (finding that because the agreement required that the employer give notice of any amendment and applied to only prospective claim, as required by Texas law, the plaintiff's illusory argument failed). Because the Plan does not allow termination or modification to have a retroactive effect, it is not illusory. *See Easterling v. Anchor Fabrication, LLC*, No. 3:13-CV-4744-N, 2014 WL 12588309, at *2 (N.D. Tex. Mar. 12, 2014) (finding that although the defendants were allowed to modify or terminate the agreement because the amendment did not have retroactive effect it was not illusory). Plaintiffs have not shown that the arbitration agreement is void, invalid, or illusory.

### 4.    *Unconscionable*

Plaintiffs next argue that even if valid, the arbitration provision "is unenforceable because it is unconscionable by its terms." (doc. 15 at 15.)

In Texas, an unconscionable contract is unenforceable. *See In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). Unconscionability under Texas law can either be procedural, if it involves circumstances surrounding the adoption of the arbitration provision, or substantive, if it concerns the fairness of the arbitration provision itself. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (citing *In re Haliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002)). "In determining whether an agreement is unconscionable, the court must examine 'the entire atmosphere in which the agreement was made; the alternatives, if any, available to the parties at the time the contract was made; the 'nonbargaining ability' of one party; whether the contract was illegal or against public policy; and whether the contract was oppressive or unreasonable.'"

16

*Fat Butter, Ltd v. BBVA USA Bancshares, Inc*, 4:09-CV-3053, 2010 WL 11646900, at \*16 (S.D. Tex. Apr. 13, 2010), *adopted sub nom. by Fat Butter, Ltd. v. BBVA USA Bancshares, Inc.*, CIV.A. H-09-3053, 2010 WL 8756271 (S.D. Tex. Apr. 29, 2010) (quoting *Alamo Moving & Storage One Corp. v. Mayflower Transit L.L.C.*, 46 F. App'x 731, 2002 WL 1973484, at \*2 (5th Cir. July 31, 2002)).   "The burden of proving unconscionability rests on the party seeking to invalidate the arbitration agreement." *Id.*   The court may only evaluate the unconscionability of the arbitration provision, not the contract as a whole. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 430 (5th Cir. 2004).

a.    Procedural

Procedural unconscionability examines "the contract formation process and the alleged lack of meaningful choice." *BDO Seidman, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 852, 858 (Tex. App.—Dallas 2010, no pet. h.).   "The focus is on the facts surrounding the bargaining process." *In re Rangel*, 45 S.W.3d 783, 786 (Tex. App.—Waco 2001, orig. proceeding).

Plaintiffs do not present any evidence to meet their burden to show that the formation of the Plan was procedurally unconscionable. The Plan expressly provided an alternative to arbitration by permitting employees to "retain the right to resolve disputes through litigation rather than according to the Plan" by submitting a written election of that right within seven days.  (doc. 12-1 at 15.) Plaintiffs do not allege, or show, that they elected to retain their right to resolve disputes through litigation in writing.  They point to no evidence in the record showing that the process through which they entered into the arbitration agreement was unfair or oppressive, or that they lacked a meaningful choice to arbitration.  They have therefore not met their burden to show that the arbitration provision was procedurally unconscionable.

17

b.    *Substantive*

In Texas, the general test for substantive unconscionability is "whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001). The focus is on preventing "oppression and unfair surprise and not of disturbing allocation of risks because of superior bargaining power." *Id.* "But a bargain is not negated because one party may have been in a more advantageous bargaining position." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 679; *In re Lyon Fin. Services, Inc.*, 257 S.W.3d at 233.

Plaintiffs argue that the Plan is unconscionable because it prevents them from "effectively vindicating [their] statutory rights[.]" (doc. 15 at 17.) They contend that the terms are designed to discourage employees from bringing claims and requires them to "go through three separate internal procedures, which may last 270 days (approximately nine months) and then an entire mediation process of unknown time and procedures," before they are able to begin the arbitration process. (*See* doc. 15 at 16-17.) Their substantive unconscionability argument is directed at the validity of the entire agreement. "Only if the arbitration clause can be attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator." *Will–Drill Res, Inc.*, 352 F.3d at 218. Because the substantive unconscionability challenge to the Plan is directed to the entire agreement and not the arbitration agreement itself, it is an issue for an arbitrator to decide. *See id.*

Because Plaintiffs have not shown why the arbitration agreement should not be enforced, they are bound by the terms of the agreement to arbitrate.

18

**B.**    **Step Two–Legal Restraints**

The next step is to determine whether any legal restraints external to the agreement foreclose arbitration of Plaintiffs' claims. *See OPE Int'l LP*, 258 F.3d at 445-46.  Here, Plaintiffs do not argue that any external legal constraints exist. (*See* doc. 15.)  Because no legal restraints external to the Plan foreclose arbitration of their claims, they should be compelled to submit them to arbitration. *See, e.g., Tanoury v. Symphony Serv. Corp.*, No. 3:12-CV-1142-L, 2013 WL 705121, at *5 (N.D. Tex. Feb. 5, 2013), *adopted by* 2013 WL 706048 (N.D. Tex. Feb. 27, 2013).

## V. MOTION TO DISMISS

Defendants also move to dismiss the suit on grounds that all of Plaintiffs' claims are arbitrable. (*See* doc. 11 at 17.)

Under § 3 of the FAA, a court must stay the trial of the action until arbitration is complete if it determines that the claims are properly referable to arbitration and one of the parties applies for a stay of the proceedings. 9 U.S.C. § 3; *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.1992). A stay is mandatory upon a showing that the opposing party has commenced suit "upon any issue referable to arbitration under an agreement in writing for such arbitration." *Id.*; *accord Mun. Energy Agency of Miss. v. Big Rivers Elec. Corp.*, 804 F.2d 338, 342 (5th Cir. 1986). When all of the issues before the Court are arbitrable and there are no other reasons to retain jurisdiction over the suit, it may dismiss the action. *See Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999) (noting the Fifth Circuit has "interpreted [9 U.S.C. § 3] to mean only that the district court cannot deny a stay when one is properly requested") (citing *Alford*).

Given that all of the issues raised by Plaintiffs are arbitrable and must be submitted to

19

arbitration, the suit should be dismissed with prejudice.

## VI.  RECOMMENDATION

Defendants' motion should be **GRANTED**, and the case should be dismissed without prejudice.

**SO RECOMMENDED** this 24th day of February, 2020.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE